## HYGRADE PROVISION COMPANY, INC., ET AL. *v.* SHERMAN, AS ATTORNEY GENERAL OF THE STATE OF NEW YORK, ET AL.

## LEWIS & FOX COMPANY *v.* SHERMAN, AS ATTORNEY GENERAL OF THE STATE OF NEW YORK, ET AL.

## SATZ *v.* SHERMAN, AS ATTORNEY GENERAL OF THE STATE OF NEW YORK, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 104–106.   Argued November 20, 21, 1924.—Decided January 5, 1925.

1. Equity will interfere to prevent criminal proceedings under an unconstitutional statute when that is necessary to effectually protect property rights.   P. 500.
2. A criminal statute is not lacking in due process of law merely because the application of its prohibition may be uncertain in exceptional cases; and the more clearly so where the act defined is made criminal only when performed with a specific intent to defraud. P. 501.
3. Laws of New York punishing those who sell or expose for sale meat or meat preparations falsely misrepresenting them as "Kosher," or " as having been prepared under and of a product or products sanctioned by the orthodox Hebrew religious requirements," or who sell or expose for sale in the same place both Kosher and non-Kosher meat etc., without signs indicating that both kinds are sold and labeling the articles accordingly, do not violate the rights of dealers under the due process and equal protection clauses of the Fourteenth Amendment or infringe the Commerce Clause.   Pp. 501, 503.

Affirmed.

APPEALS from decrees of the District Court dismissing the bills in three suits brought by dealers to enjoin the Attorney General of the State of New York and the District Attorney of the County of New York from proceed-

ing against the plaintiffs under chapters 580 and 581, Laws of New York, 1922, respecting the sale of " Kosher " meat and meat preparations.

*Mr. David L. Podell,* with whom *Mr. Benjamin S. Kirsh* was on the brief, for appellants.

*Mr. Samuel H. Hofstadter,* with whom *Mr. H. H. Nordlinger* was on the brief, for Sherman, Attorney General, appellee.

*Mr. Felix C. Benvenga,* with whom *Mr. Charles Henry* was on the brief, for Banton, District Attorney, appellee.

Mr. Justice Sutherland delivered the opinion of the Court.

These appeals challenge the constitutionality of cc. 580 and 581, 2 Laws of New York, 1922, pp. 1314–1315, as being in contravention of the due process and equal protection of the law clauses of the Fourteenth Amendment and the commerce clause of the Constitution of the United States. So far as these cases are concerned, the statutes are substantially alike, and it is enough to refer to c. 581 which provides that any person who with intent to defraud: . . . " 4. Sells or exposes for sale any meat or meat preparation and falsely represents the same to be kosher, or as having been prepared under and of a product or products sanctioned by the orthodox Hebrew religious requirements; or falsely represents any food product or the contents of any package or container to be so constituted and prepared, by having or permitting to be inscribed thereon the word ' kosher ' in any language; or sells or exposes for sale in the same place of business both kosher and nonkosher meat or meat preparations who fails to indicate on his window signs and all display advertising, in block letters at least four inches in height, ' kosher and nonkosher meat sold here;' or who exposes for sale in any show window or place of business

both kosher and nonkosher meat or meat products who fails to display over such meat or meat preparation so exposed a sign in block letters at least four inches in height reading ' kosher meat,' or ' nonkosher meat,' as the case may be," is guilty of a misdemeanor.

Separate suits were brought against appellees to enjoin them from proceeding against appellants for any alleged failure to comply with the foregoing statutory requirements or from making any threats of prosecuting or from conducting any prosecutions by reason of any failure to label any of the meats sold as " not kosher " or otherwise interfering with or seeking to prevent the full, free and unhampered sale of their products without labeling, etc., and from injuring their business " by compelling it to be discredited in standing and reputation, and by having its merchandise wrongfully branded as ' nonkosher,' in accordance with the requirements of said enactments."

The several bills allege that appellees " have threatened to prosecute all complaints against persons or concerns engaged as manufacturers, dealers, retailers, or otherwise in the sale of raw or prepared meat commodities, who are charged with violating the statutes; " that by reason of these threats and of the fear inspired by the requirements of the statutes, when called upon at their peril to determine whether their products are kosher and label the same, appellants have decided and will continue to decide that all products sold by them are not kosher; that such determination has been and will be induced by the fear that some judge or jury might determine that the Rabbinical law or the customs, traditions and precedents of the orthodox Hebrew religious requirements necessitate that even such meats as appellants sell as kosher are not kosher. The bills contain allegations tending to show the impossibility or, at least, the great difficulty of determining with certainty what is kosher according to the Rabbinical law and the customs, traditions and precedents

of the orthodox Hebrew religious requirements; but appellants allege that whenever they could possibly determine in advance whether any meat commodity in their honest belief might be called kosher, they have sold the same as kosher, but not otherwise. The bills aver that irreparable injury to appellants' business, property, good will and reputation will result. It does not appear that any of the appellants has ever been prosecuted for a violation of the statutes or has ever been specifically threatened with prosecution, the threats alleged being, in substance, simply that all violators of the statutes will be prosecuted. The District Court, in each case, after a hearing upon an order to show cause why a preliminary injunction should not issue, upheld the statutes, denied the injunction and dismissed the bill.

The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. *Packard* v. *Banton,* 264 U. S. 140, 143; *In re Sawyer,* 124 U. S. 200, 209–211; *Davis & Farnum Manufacturing Co.* v. *Los Angeles,* 189 U. S. 207, 217. But appellants seek to bring themselves within an exception to this general rule, namely, that a court of equity will interfere to prevent criminal prosecutions under an unconstitutional statute when that is necessary to effectually protect property rights. *Packard* v. *Banton, supra; Terrace* v. *Thompson,* 263 U. S. 197, 214. That these bills disclose such a case of threatened actual and imminent injury as to come within the exception is not beyond doubt. But upon a liberal view of the decisions above cited and other decisions of this Court (see *Kennington* v. *Palmer,* 255 U. S. 100, and cases referred to in footnote), we accept the conclusion of the lower court, based on the decisions of this Court, that if the statutes under review are unconstitutional appellants are entitled to equitable relief; and pass to a consideration of the constitutional questions.

1. The specific complaint is that the word " kosher " and the phrase " orthodox Hebrew religious requirements " are so indefinite and uncertain as to cause the statutes to be unconstitutional for want of any ascertainable standard of guilt. It is in support of this assumption that appellants allege they are unable to determine with any degree of certainty whether a particular meat product is kosher, and, when called upon, at their peril, to make a determination and label the product accordingly, they have decided and will continue to decide that all of the products sold by them are nonkosher. But obviously the statutes put no such burden upon them, since they expressly require that any representation that a product is kosher must not only be false but made with intent to defraud. The Appellate Division of the Supreme Court of New York, upholding the validity of a statute substantially the same as those now under review, in *People* v. *Atlas,* 183 App. Div. 595, 596–597, thus characterized it:

" The purpose of the statute, manifestly, is to prevent and punish fraud in the sale of meats or meat preparation, and it only operates on those who knowingly violate its provisions, for it is expressly provided that there must be both an intent to defraud and a false representation."

It thus appears that, whatever difficulty there may be in reaching a correct determination as to whether a given product is kosher, appellants are unduly apprehensive of the effect upon them and their business, of a wrong conclusion in that respect, since they are not required to act at their peril but only to exercise their judgment in good faith, in order to avoid coming into conflict with the statutes. Indeed, putting the statutes aside, such judgment they would be bound to exercise upon ordinary principles of fair dealing. By engaging in the business of selling kosher products they in effect assert an honest purpose to distinguish to the best of their judgment between

what is and what is not kosher. The statutes require no more. Furthermore, the evidence, while conflicting, warrants the conclusion that the term " kosher " has a meaning well enough defined to enable one engaged in the trade to correctly apply it, at least as a general thing. If exceptional cases may sometimes arise where opinions might differ, that is no more than is likely to occur, and does occur, in respect of many criminal statutes either upheld against attack or never assailed as indefinite. In *Nash* v. *United States,* 229 U. S. 373, 376–7, this Court had before it a similar contention in respect of the Anti-Trust Act and disposed of it as follows:

"And thereupon it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that of a jury of less competent men. . . .

" But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death."

See also, *Waters-Pierce Oil Co.* v. *Texas* (No. 1), 212 U. S. 86, 109; *Miller* v. *Strahl,* 239 U. S. 426, 434; *Sligh* v. *Kirkwood,* 237 U. S. 52; *Coomer* v. *United States,* 213 Fed. 1, 5. Many illustrations will readily occur to the mind, as for example statutes prohibiting the sale of intoxicating liquors and statutes prohibiting the transmission through the mail of obscene literature, neither of which have been found to be fatally indefinite because in some instances opinions differ in respect of what falls within their terms. Moreover, as already suggested, since the statutes require a specific intent to de-

fraud in order to encounter their prohibitions, the hazard of prosecution which appellants fear loses whatever substantial foundation it might have in the absence of such a requirement. *Omaechevarria* v. *Idaho,* 246 U. S. 343, 348.

2. Lewis & Fox Co. is a Massachusetts corporation conducting a general provision supply business including the shipment and sale of original packages into and within the State of New York. It is this situation which forms the basis of the contention that the commerce clause is violated. It is enough to say that the statutes now assailed are not aimed at interstate commerce, do not impose a direct burden upon such commerce, make no discrimination against it, are fairly within the range of the police power of the State, bear a reasonable relation to the legitimate purpose of the enactments, and do not conflict with any congressional legislation. Under these circumstances they are not invalid because they may incidentally affect interstate commerce. *Sligh* v. *Kirkwood,* 237 U. S. 52, 60–61; *Savage* v. *Jones,* 225 U. S. 501, 524–526.

*Affirmed.*

Mr. Justice Brandeis took no part in the consideration of this case.