## CITY OF MIAMI v. SUTTON et al.
### No. 13113.

United States Court of Appeals
Fifth Circuit.
April 25, 1950.

John D. Marsh, Asst. City Atty., J. W. Watson, Jr., City Atty., Miami, Fla., for appellant.

George C. McCaughan, Miami, Fla., and Arthur A. Kimmel, Miami Beach, Fla., for appellees.

Morris Berick, Herbert S. Shapiro and Richard E. Gerstein, Miami Beach, Fla., for amicus curiae.

Before HUTCHESON, Chief Judge, and WALLER and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The City of Miami, appellant here, and its officers, were each and all enjoined by order of the trial Court from enforcing the

City's Ordinance No. 3535 against Durward B. Sutton and Sarah B. Sutton, doing business as Sutton Jewelry Company. By this appeal the City contends that the Court erred in exercising jurisdiction, in granting the injunction, and in denying the appellant's motion to dismiss. Under the facts of this case and the law properly applicable thereto, we sustain the contention that the Court erred in overruling the motion to dismiss, and in granting an injunction.

The complaint of the appellees, seeking a declaratory decree and injunctive relief, outlined what was denominated a "unique method of doing business and effecting sales" of jewelry and other related merchandise, which while it concededly has some of the features of a "public auction" sale is "materially different from such auction sales in important respects," these claimed differences in law and fact being fully stated.[1] It is alleged that the appellees had prepared for inaugurating the proposed method of sales by acquiring a substantial stock of articles, the disposal of which was prevented by the threat of a series of vexatious arrests, any one of which would irreparably damage the good reputation of the complainants which they had enjoyed in the community since 1925; and that the threatened and intended enforcement of the ordinance had injuriously restricted them in their business and resulted in a diminution of their profits.

A copy of Ordinance No. 3535 of the City of Miami, attached as an exhibit to the complaint, provides stringent regulations governing the sale and offer to sell of jewelry, watches and diamonds "at public auction" and requires the securing of a permit to conduct such auction; the furnishing of detailed reports of operations by permittees; and subjects violators to a fine of not exceeding $500.00 or imprisonment not to exceed 60 days, or both.[2] The complaint specifically concedes that fraud is likely to occur at auction sales of diamonds, jewelry and other like articles conducted after nightfall and by artificial light during the excitement of competitive bidding, when the high bid is final without opportunity for daylight inspection and examination. Indeed the selection and proposed adoption of "appellees' detailed method" is said to be prompted by the desire to eliminate the possibility of fraud or deception. Appellees set forth as the controversy between the parties their contention that the provisions of the ordinance, and particularly specified sections thereof, are not applicable to their proposed method of doing business, but if so, are violative of the provisions of Amendment 4 and Amendment 14 of the Constitution of the United States, whereas the City contends and asserts that the ordinance is applicable to appellee's detailed method of doing business, and the ordinance and all of its provision is constitutional. The officials of defendant have "threatened to arrest the plaintiffs and * * * all of their employees and charge each of them with a violation of the provisions of such ordinance if and when they should conduct their business * * * within the corporate limits of said defendant municipality between the hours of six in the evening of any day and eight in the morning of the following day, and if and when the plaintiffs employ in the conduct of their business the methods detailed hereinabove. * * *" The appellees prayed that the Court decree the provisions of the ordinance and the specific provisions re-

1. It is stated in the briefs that this proposed plan would in operation and legal effect be the same as that referred to and upheld in Zaconick v. City of Hollywood, D.C., 85 F.Supp. 52, in which the contentions now urged were approved by the trial Court in the present case and the enforcement of an ordinance identical with Miami's #3535 enjoined. It is apparent that the plan of sales proposed to be adopted by the complainants is in substantial accord with the discussion and rulings of the Court there made.

2. A similar ordinance has been upheld by the Florida Courts. The opinion in Zaconick v. City of Hollywood, supra, [85 F.Supp. 55] recognizes that the Levy case (Levy v. Stone), 97 Fla. 458, 121 So. 565, 566, held "a municipal ordinance similar (if not identical) in its terms to the ordinance here in question" was valid as applied to " 'auction sales' at night of certain classes of merchandise."

ferred to as not applicable to the plaintiffs and their proposed method of conduct of their business; or if the Court holds the provisions of such ordinance applicable to the plaintiffs and such methods, it declare and decree such ordinance unconstitutional and enjoin and restrain the municipality and its officers from enforcing or attempting to enforce the ordinance during the pendency of the cause or until the further order of the Court, and that upon the final hearing the injunction be made permanent.

Eight days after the filing of the complaint the municipality responded with a motion to dismiss on the grounds: that no federal question was involved; that there was no matter stated warranting injunc- tive relief; that the complainants had a complete and adequate remedy at law in the courts of the State of Florida; that there was no such showing of irreparable injury as would warrant the issuance of an injunction; and that the ordinance was valid and constitutional. On the same day the Court, after a hearing, granted an injunction upon terms and provisions as in the order set forth.[3] On January 16th, upon a further hearing, the motion to dismiss the complaint was ordered denied and the defendant granted twenty days within which to file its answer.

■ The temporary injunction issued in this case had factual support only in the allegations of the complaint. There was in

3. "It is Ordered and Decreed herein as follows:

"1. That on the plaintiffs' compliance with the provisions of the paragraph hereof numbered 2, and the subject to the provisions of the paragraph hereof numbered 3, the defendant municipality, and each of its officers, agents, servants and employes be, and they hereby are, enjoined and restrained until the further order of the Court, from enforcing or attempting to enforce against the plaintiffs any of the provisions of that certain ordinance of the defendant municipality, to-wit: Ordinance #3535, dated April 7, 1948.

"2. That the plaintiffs be, and they hereby are, required to file herein a good and sufficient bond in the penal sum of $1000.00 with good and sufficient surety or sureties, payable to the defendant, and conditioned that the plaintiff will pay, or cause to be paid, to the defendant, if and in the event the plaintiffs' application for this injunctive order shall be later held to have been wrongful, all costs, damages and expenses (including reasonable attorney's fees) which the defendant shall pay or incur and which shall result from, or be occasioned by, such wrongful application; and the injunctive provisions of the paragraph hereof numbered 1, shall not become or be effective unless and until the plaintiffs have filed, and the Clerk of this Court shall have approved such bonds.

"3. That the plaintiffs be, and they hereby are, required to conduct and operate their business (the nature and character of which are set forth in their complaint) in strict accordance with the methods outlined and detailed in such complaint, and that they be, and they hereby are, further required (a) to inform and advise all prospective or potential purchasers, prior to offering any article for sale, of the conditions or provisions subject to which any proposal to buy such article is to be accepted by the plaintiffs; (b) to prominently display, at all times, in their place of business a notice or bulletin in and by which prospective or potential purchasers shall be effectively and adequately informed and advised of the plaintiffs' methods of doing business (as outlined and detailed in their complaint); and (c) to furnish and deliver to each prospective or potential purchaser, whose conditional or provisional proposal to buy any article, offered for sale by the plaintiffs shall have been accepted by him, a written or printed memorandum in and by which the plaintiffs shall legally and effectively bind themselves contractually to refund to him or her the full amount of the purchase price of such article conditionally and provisionally paid to or deposited with the plaintiffs by such prospective or potential purchaser if and in the event he or she, at any time within thirty days after the submission of such conditional or provisional proposal, with or without the assignment of any reason or excuse for doing so, shall redeliver such article, in the same condition it was in at the time of the delivery to such prospective or potential purchaser, to the plaintiffs and request such refund; and the applicability and effectiveness of the injunctive provisions of the paragraph hereof number 1, are dependent and conditioned on strict compliance by the plaintiffs with the provisions of this paragraph."

opposition the defendant's motion to dismiss. While for the purposes of the motion to dismiss, the factual allegations of the complaint may be taken as true, this is nevertheless not the preferable foundation for the issuance of an injunction against the institution of a prosecution for violation of a municipal ordinance. Regardless of this, however, the facts which may be considered as thus established are insufficient to authorize the issuance of an injunction. The complaint fails to show "the imminence and immediacy of proposed enforcement, the nature of the threats actually made, and the exceptional and irreparable injury which [the complainant] would sustain if those threats were carried out." Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 966, 85 L.Ed. 1416. Particularly here there is and can be no showing of irreparable injury, for there is not even a claim of injury to complainants' established and going business, but merely a claim that the hazards posed by the contemplated enforcement of the ordinance prevents complainants from embarking upon a new enterprise, from trying out, it may be said, their proposed unique method of merchandising. The only loss which the complainants could sustain is speculative, dependent upon what, if any, profits they might make if they are permitted to begin and carry on the conduct of their sales in the manner which they assert is legal. They are not disturbed in any feature of their business dealings which they allege they have conducted since 1925. Since there is no danger to their already established business, but merely apprehension of punishment for, and prospective loss of profits in being prevented from, carrying on their proposed new method of sale, the question of apprehended multiple prosecutions could only arise upon continued and persistent engagement in the new business in disregard of the adjudications by the municipal or state courts in which the question of the legality of the proposed business should properly be made. It is true that they are confronted with the necessity of determination of whether their proposed business operations fall within the regulations of the ordinance, but the situation is no different from numerous instances in the law "where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death;" Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232. The complaint presents no ground authorizing the issuance of an injunction to prevent multiple prosecutions.

■ The law applicable to the situation here is clearly stated in Beal v. Missouri Pacific R. Corp. 312 U.S. 45, 61 S.Ct. 418, 420, 85 L.Ed. 577, as follows:

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. In re Sawyer, 124 U.S. 200, 211, 8 S.Ct. 482, 488, 31 L.Ed. 402; Davis & Farnum Mfg. Co. v. City of Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L.Ed. 778; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402. No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid. Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 17, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 258, 68 L.Ed. 596; Tyson & Bro. United Theatre Ticket Offices v. Banton, 273 U.S. 418, 428, 47 S.Ct. 426, 427, 71 L.Ed. 718, 58 A.L.R. 1236; Cline v. Frink Dairy Co., 274 U.S. 445, 452, 47 S.Ct. 681, 682, 71 L.Ed. 1146.

"This is especially the case where the only threatened action is the prosecution in the state courts by state officers of an alleged violation of state law, with the resulting final and authoritative determination of the disputed question whether the act complained of is lawful or unlawful. Harkrader v. Wadley, 172 U.S. 148, 19 S.Ct. 119, 43 L.Ed. 399; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322. The federal courts are without jurisdiction to try alleged criminal

violations of state statutes. The state courts are the final arbiters of their meaning and appropriate application, subject only to review by this Court if such construction or application is appropriately challenged on constitutional grounds. Hygrade Provision Co. v. Sherman, supra; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927.

"Hence interference with the processes of the criminal law in state courts, in whose control they are lodged by the Constitution, and the determination of questions of criminal liability under state law by federal courts of equity can be justified only in most exceptional circumstances, and upon clear showing that an injunction is necessary in order to prevent irreparable injury. Cf. Hygrade Provision Co. v. Sherman, supra; Cline v. Frink Dairy Co., supra; Spielman Motor Sales Co. v. Dodge, supra. And in the exercise of the sound discretion, which guides the determination of courts of equity, scrupulous regard must be had for the rightful independence of state governments and a remedy infringing that independence which might otherwise be given should be withheld if sought on slight or inconsequential grounds. Di Giovanni v. Camden Fire Insurance Ass'n, 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47, and cases cited." See also, Watson v. Buck, supra.

These principles are even more applicable here where there is no substantial contention that the City Ordinance, when applied to the subject matter which it purports to encompass, is unconstitutional as such, but only becomes so when applied to the complainants in the conduct of their proposed business. Nevertheless, under these circumstances, appellees were granted by the issuance of the injunction, in effect, a determination that the manner and method presented to the Court as a proposed plan of operation in the future was not within the terms of the ordinance, and therefore that the municipality would not be permitted to test the actual manner of the conduct of the complainants' business (which of course could be determinable only after it had been begun). Consequent-

ly determination of what practice or means of operation would result in a violation of the ordinance was in effect removed from the jurisdiction and control of the municipal or state courts, and opportunity for determination of the legality of actual operation restricted solely to such rights as the city might secure by presentation to the Court of the matter of noncompliance with the Court's order by a request for modification of the restraining order. Thereby jurisdiction of the violation of the ordinance was, for all practical purposes, removed from the municipal or state courts to the federal court, but with the appellees left immune from any penalty for violation of the City Ordinance; and in case of any violation of the restrictions of the decree, only subject to the loss of the protection the decree provided when and if the city might secure a dissolution of the injunction.

The restrictions upon the propriety of the grant by a federal court of an injunction to restrain the institution of prosecutions for violations of state or municipal penal laws are in nowise relaxed because the application for an injunction may be presented to the Court along with a request for a declaratory decree.

Since the issuance of an injunction is the only means by which any declaration of rights could effectively be enforced or bring about a termination of the controversy, the legal impossibility of obtaining such injunctive relief renders a declaration advisory only and therefore futile to effectuate a settlement of the controversy. The opinion and decree of the federal court would not be *res adjudicata* in any subsequent criminal proceeding in the municipal or state court, and the matter of the acceptance of the federal court's declaration would be at last left solely to the voluntary determination of the municipal authorities.

The interlocutory injunction was erroneously granted. The complaint should have been dismissed. The judgments are reversed with directions to dismiss it.

Reversed.